Otis HILLIARD, Plaintiff,

v.

Charles SCULLY, Harold J. Smith,
Officer R. Dore, John B. Wong,
Defendants.

No. 81 Civ. 5457 (JES).

United States District Court,
S. D. New York.

April 28, 1982.

Otis Hilliard, plaintiff/pro se.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendants; Joyce Andren, Asst. Atty. Gen., of counsel.

SPRIZZO, District Judge:

This is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff, proceeding pro se and in forma pauperis, has filed motions for: (1) summary judgment; (2) leave to file a supplemental complaint; (3) jury trial; and (4) a preliminary injunction. Defendants have moved for judgment on the pleadings or, in the alternative, for summary judgment in their favor, and have supported their motion with affidavits and documentary exhibits.[1] In accordance with Fed.R.Civ.P. 12(c), this Court will exercise its discretion in favor of receiving defendants' proferred evidence and will treat defendants' motion as a cross motion for summary judgment. For the reasons hereinafter set forth, plaintiff's motions for summary judgment, leave to file a supplemental complaint and jury trial are denied; plaintiff's motion for a preliminary injunction is consolidated with trial of the action on the merits; and defendants' cross motion for summary judgment is denied.

FACTS

On September 2, 1981 plaintiff filed a complaint seeking declaratory and injunctive relief as well as money damages against the following defendants: Charles Scully, Superintendent of Green Haven Correctional Facility ("Green Haven"); Harold J. Smith, Superintendent of Attica Correctional Facility ("Attica"); Officer R. Dore,[2] a security officer at Green Haven; and John B. Wong, Program Coordinator at Green Haven.

Plaintiff alleges that, while he was in custody at Green Haven, he was charged with suspicion of arson by defendant Dore and was confined in a special housing unit.[3]

1. Plaintiff has submitted an affidavit entitled "Affidavit in Response to Defendants Motion in Opposition to Plaintiff's Motion for Summary Judgment and Jury Trial." While the affidavit recites that it is submitted by an inmate legal assistant, it is signed by plaintiff and is notarized. Therefore, the Court will treat it as plaintiff's affidavit and memorandum of law in support of his summary judgment motion.

2. Officer Dore has not been served and is not a party to the action at this time.

3. A special housing unit is defined as "a cell or group of cells within a facility, maintained separate and apart from cells used by inmates in the general population, for confinement of inmates who are not in a program that permits them to commingle with the general inmate population." 7 NYCRR § 300.2(b). Inmates are subject to placement in special housing units for a variety of reasons. The relevant classifications set forth in 7 NYCRR § 304.1 are as follows: ... (b) Protective admission, which shall apply in the case of inmates who are potential victims, or are witnesses likely to be intimidated, or lack the strength to live in the general institutional community, or must, for good cause, be restricted from communication with the general inmate population; (c)

Subsequently, he was referred to a superintendent's proceeding conducted by defendant Wong,[4] at which proceeding it was determined that plaintiff's confinement in a special housing unit should be continued. Plaintiff maintains that he was denied due process in that he was not afforded the assistance of a counsel substitute at the superintendent's proceeding, was not confronted with any evidence and was not provided with a statement setting forth findings of fact and the evidence relied on in reaching the conclusion that plaintiff's confinement in involuntary protective custody in a special housing unit should be continued.

■ Plaintiff also alleges that defendants Scully and Smith violated his constitutional rights in that they thwarted his right to seek judicial relief by transferring him to avoid the jurisdiction of the courts where plaintiff sought relief.[5] Thus, defendant Scully is alleged to have transferred plaintiff to Attica when plaintiff petitioned the local courts for relief and a hearing was ordered. Defendant Smith is alleged to have transferred plaintiff to Great Meadow when plaintiff petitioned the Wyoming County Court for review of the acts complained of, including the aforesaid transfer, and after an order directing his appearance was returned to that facility by that court. Defendants' answer, which was filed on October 19, 1981, denied plaintiff's allegations.

## A. The Due Process Claim

It is clear that, to the extent consistent with the exigencies of an institutional setting, prisoners are entitled to the protection of the due process clause. *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974); *see also Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). In *Wolff*, the Supreme Court held that certain minimal due process requirements must be observed by the state before the custodial or

Detention admission, which shall apply in the case of inmates who are awaiting initial appearance before the adjustment committee; and (d) Adjustment admission, which shall apply in the case of inmates who are confined involuntarily in a special housing unit pursuant to a determination of the adjustment committee or a disposition in a superintendent's proceeding. While defendants' exhibits I, M and O characterize plaintiff's admission as protective, it would appear that he might well have been confined on an adjustment admission basis. See nn. 4 & 6, *infra*.

4. Every incident of serious inmate misbehavior must be reported to the superintendent. 7 NYCRR § 251.4(a). Each such report is then referred to the adjustment committee, *id.* at § 252.3(b)(1) whose function it is to secure the inmate's understanding of and adherence to prison rules and regulations, *id.* at § 252.5(a). While the adjustment committee is charged with ascertaining the full and complete facts and circumstances behind the alleged misbehavior, *id.* at § 252.2, it is not required to make findings with respect to whether an inmate actually violated a particular rule, nor is it permitted to direct its action toward the objective of imposing punishment, *id.* at § 252.5(b). If the adjustment committee is of the opinion that the inmate has engaged in serious misbehavior, and that disciplinary sanctions are necessary, it recommends to the superintendent that a superintendent's proceeding be held, *id.* at § 252.4(b)(2). If the committee is of the

opinion that an inmate's behavior is such that his presence in a general housing unit is inconsistent with the best interests of the facility, it may confine him in a special housing unit provided it immediately recommends that a superintendent's proceeding be conducted, *id.* at § 252.5(e)(3). If the charge against the inmate is affirmed at the superintendent's proceeding on the basis of substantial evidence, a variety of sanctions may be imposed, including, but not limited to, loss of privileges, change of program, and confinement to a special housing unit on a diet which is the same as or different from that of other inmates and loss of good time. *Id.* at § 253.5(a). The rules and regulations governing confinement of inmates in special housing units also provide that, when an inmate is involuntarily committed to protective custody, a superintendent's proceeding must be held within 14 days of the admission to determine whether there is substantial evidence that such custody is necessary. *Id.* at § 304.3(c).

5. Effective access to the courts is a constitutional right, *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), which "encompasses all the means a defendant or petitioner might require to get a fair hearing from the judiciary on all charges brought against him or grievances alleged by him," *Gilmore v. Lynch*, 319 F.Supp. 105, 110 (N.D.Cal.1970), *aff'd sub nom. Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971).

confinement conditions of a prisoner may be altered because of alleged serious or flagrant misconduct, i.e. (1) the prisoner must receive advance written notice of the charges; (2) the prisoner must be provided with a written statement of the factfinders as to the evidence relied on and the reasons for the disciplinary action taken; (3) the prisoner is entitled to call witnesses and submit documentary evidence, provided the safety or goals of the institution will not thereby be jeopardized; (4) if an inmate is illiterate or if the issues are complex the inmate should be free to seek aid from a fellow inmate or from a staff member, although he is not entitled to retained or appointed counsel; and (5) the body which conducts the hearing must be sufficiently impartial to satisfy the due process clause.

■ Defendants contend that plaintiff is not entitled to the aforesaid due process safeguards because he was not subjected to a disciplinary proceeding. This contention lacks merit and must be rejected. First, it cannot be said that plaintiff's confinement in a special housing unit was not punitive.[6] In accordance with prison rules and regulations for imposing disciplinary sanctions, Officer Dore filed a misbehavior report which was forwarded to the adjustment committee. The adjustment committee in turn recommended to superintendent Scully that a superintendent's proceeding be conducted and at the superintendent's proceed-

ing the charge against plaintiff was affirmed. Moreover, even if plaintiff's confinement was not punitive, *Wolff* nonetheless applies. *Wright v. Enomoto,* 462 F.Supp. 397 (N.D.Cal.1976), *aff'd without opinion,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978) holds that prisoners may not be subjected to loss of liberty even for other than disciplinary reasons[7] unless the minimal protections required by *Wolff* are observed. *See McKinnon v. Patterson,* 568 F.2d 930, 938 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978) construing *Crooks v. Warne,* 516 F.2d 837, 839 (2d Cir. 1975). Confinement to a special or segregated unit does impact a liberty interest. *McAlister v. Robinson,* 488 F.Supp. 545 (D.Conn.1978), *aff'd sub nom. Raffone v. Robinson,* 607 F.2d 1058 (2d Cir. 1979).

In this case the state itself has acknowledged that liberty interests are at stake with respect to the proceedings at issue. Indeed, it has limited the discretion of its prison officials with respect to the commitment of inmates to involuntary protective custody in special housing units by requiring that, within 14 days of such admission, a proceeding with procedural safeguards must be conducted to determine whether there is substantial evidence that protective custody is necessary.[8] *See Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935; *Wright v. Enomoto, supra.*

6. Many cases have held that punitive segregation in a special housing unit is tantamount to a substantial deprivation requiring minimal due process safeguards. *McKinnon v. Patterson,* 568 F.2d 930, 936 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

7. In *Wright,* the standards for administrative segregation included the following: the inmate constitutes a danger to himself, to other inmates or to the staff. The Court notes that the regulation at issue here, 7 NYCRR § 304.1(b), provides for protective admission when "for good cause, [the inmate must] be restricted from communication with the general inmate population." Moreover, § 252.5(e)(3), which gives the adjustment committee the power to place an inmate in a special housing unit, provides that such action is justified when the committee is of the opinion that the inmate's behavior is such that his presence in a general housing unit is inconsistent with the best inter-

ests of the inmate or the facility. These standards certainly would appear to be broad enough to encompass the standards for administrative segregation discussed in *Wright.*

8. 7 NYCRR § 304.3(c). The proceeding must be conducted in accordance with the rules and regulations governing superintendent's proceedings. Those rules and regulations expressly require that certain procedural protections be observed in that, inter alia, inmates are entitled to the assistance of an employee in investigating their claims, *id.* at § 253.3(a), and they are entitled to receive a written disposition, including a statement of the evidence relied upon and the reasons for the disciplinary action, following the proceeding, *id.* at § 253.-4(i). In point, of fact, the New York Court of Appeals has indicated that the protections accorded by the state with respect to superintendent's proceedings are "vastly greater . . . than that required by the Federal Constitution

*Cf. Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Having conditioned such confinement on a finding that protective custody is necessary, the state cannot now properly claim that no liberty interest is at stake.

■ Defendants next argue that, assuming the requirements of *Wolff* are applicable, the affidavits and exhibits submitted in connection with defendants' motion establish as a matter of law that plaintiff was not denied due process. Defendants have appended to their motion papers an affidavit by defendant Wong, which affidavit indicates that it is the practice of prison administrators to furnish the inmate with a copy of the proceedings upon completion of the hearing. This affidavit, which does not even purport to assert that plaintiff was given a copy of the proceedings in this case, is clearly not conclusive on the issue of whether plaintiff was given the information required by both due process and the state regulation. Plaintiff denies that he was given any findings of fact. Therefore, a material factual dispute exists which precludes the granting of summary judgment.[9]

Finally, defendants Scully and Wong argue that, since they are functionally comparable to judges, they are entitled to absolute immunity with respect to their conduct in connection with the superintendent's proceeding. In evaluating the merits of this claim, this Court must examine the policy considerations which dictate that judges should be afforded absolute immunity as well as the factors which courts have found relevant in determining whether that protection should be extended to others.

The absolute immunity of judges from suits by private litigants arising out of their judicial conduct is grounded upon the con-cept that an independent judiciary is essential to the effective administration of justice. That concept has been indelibly established in our Constitution and is deeply rooted in the common law. Judges therefore occupy a unique position within our judicial system and the willingness of litigants to seek legal redress is in large measure dependent upon their confidence in the independence, integrity and honesty of the judicial process. Were judges to be faced with law suits by disappointed litigants because of the decisions made in the course of legal proceedings, the entire judicial process would be considerably undermined, if not destroyed.

■ However, since the judiciary occupies so unique a place in our jurisprudence, the absolute immunity afforded judges should be carefully confined and not expansively extended. This is entirely appropriate in view of the context in which judicial proceedings occur which in itself provides adequate means to correct judicial misconduct without the need for suits by litigants against judges.

■ Defendants argue that, since they review facts, weigh evidence and exercise discretion in reaching a disposition, they too should be insulated from liability for damages so that they can perform their duties freely, independently and without fear of personal consequences. While defendants' roles are in some respects similar to that of judges,[10] their claim of absolute judicial immunity must be rejected because the context in which they function lacks the safeguards which tend to reduce the need for a remedy to deter unconstitutional conduct. As the Supreme Court observed in *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978):

> [T]he safeguards · built into the judicial process tend to reduce the need for pri-

---

as interpreted in the *Wolff* case...." *Amato v. Ward,* 41 N.Y.2d 469, 473, 362 N.E.2d 566, 570, 393 N.Y.S.2d 934, 937 (1977). See n.4, *supra.*

**9.** Plaintiff also asserts that he was not afforded the assistance of a counsel substitute in connection with the superintendent's proceeding. While defendants have submitted documenta-

tion which purports to prove that plaintiff did, in fact, receive such assistance, these documents are not dispositive in view of plaintiff's denial. See Defendants' Exhibits I, K and L.

**10.** The Court notes that defendants are not empowered to issue subpoenas, nor do they make evidentiary rulings.

vate damage actions as a means of controlling unconstitutional conduct. The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges. Advocates are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court. Jurors are carefully screened to remove all possibility of bias. Witnesses are, of course, subject to the rigors of cross-examination and the penalty of perjury. Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decision-making process, there is a less pressing need for individual suits to correct constitutional error.

Superintendent's proceedings do not possess comparable safeguards. Defendant Wong, who conducted the proceeding, was appointed to act by defendant Scully,[11] who reviewed the proceeding to determine whether it complied with departmental rules and regulations.[12] Furthermore, any superintendent's proceeding is, under certain circumstances, subject to automatic review of the commissioner of corrections,[13] who is empowered, subject to the civil service law, to appoint and remove subordinate officers and other employees of the department who are assigned to correctional facilities.[14] Therefore, defendants Wong and Scully cannot be said to be insulated from outside influence. Moreover, the proceeding is not of an adversarial nature and inmates are severely limited in the presentation of their cases. They are not entitled to retained or appointed counsel,[15] nor are they entitled to cross examine witnesses against them, or to call witnesses in their behalf if doing so will jeopardize institutional safety or correction goals.[16] Furthermore, precedent has no place in the decision making process. Finally, the person conducting the superintendent's proceeding may be called upon to both investigate and adjudicate the facts in issue.[17] For these reasons, there is less likelihood that the decision making process will be as reliable and impartial. *Compare Butz v. Economou*, 438 U.S. at 512–14, 98 S.Ct. at 2913–15. Therefore, while defendants are functionally comparable to judges in certain respects, the Court concludes that they are not entitled to absolute judicial immunity.[18] The qualified immunity accorded to prison officials, *see Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), provides sufficient protection to prison officials who act in good faith.

Defendants Scully and Wong alternatively claim that summary judgment should be granted in their favor because they are protected from liability for damages by a qualified immunity. However, this Court is unable to determine, on the record before it, whether defendants will be able to avail themselves of the qualified immunity defense, and it appears that there

---

11. 7 NYCRR § 253.2(a).

12. Defendants' Exhibit Q.

13. 7 NYCRR § 270.2(a).

14. N.Y.Correc.Law § 112 (McKinney Supp. 1981 1982).

15. 7 NYCRR § 253.4(b)(2).

16. *Id.* at § 253.4(b)(1).

17. *Id.* at § 253.2(d).

18. Defendants rely on *Fitchette v. Collins*, 402 F.Supp. 147 (D.Md.1975) in which a prison warden who was required to review all cases in which prisoners were convicted of major violations by an adjustment team was held to be absolutely immune from liability for damages provided he was exercising his adjudicatory discretion "pursuant to and in accordance with expressly established and specific prisoner adjudicatory procedures." 402 F.Supp. at 154. The court further indicated that the immunity would not apply if the warden performed an act outside the scope of his authority under those procedures, such as summarily punishing a prisoner without notice and an opportunity to be heard. *Id.* Since the court imposed some limitations on the scope of the immunity it could well be argued that the immunity conferred was in fact a qualified immunity. However, if in fact an absolute immunity was afforded, this Court is disinclined to follow that holding.

are disputed issues of fact with respect to that issue.

### B. Access to the Courts

■ Defendants, relying on *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), contend that plaintiff has no liberty interest in requiring the state to confine him in any one of its prisons, and, on that basis, conclude that plaintiff's claims arising out of his transfers must be dismissed. In making this argument, defendants plainly disregard plaintiff's claim that he was transferred to obstruct his right to petition the courts, a claim which clearly is cognizable in a § 1983 suit for relief.[19] *Haymes v. Montanye*, 547 F.2d 188 (2d Cir. 1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977).

■ Alternatively, defendants argue that the transfers between facilities were entirely proper. However, since plaintiff claims that he was transferred for the purpose of interfering with his constitutional right to seek judicial relief, and since defendants deny plaintiff's claim, a genuine and material issue of fact exists.[20] Therefore, summary judgment cannot be granted.[21]

### MOTION TO FILE A SUPPLEMENTAL COMPLAINT

■ Plaintiff also has moved for leave to supplement his complaint to add allegations of improper conduct on the part of eight persons employed at Great Meadow. The question of whether such leave should be granted is committed to the sound discretion of the trial court. *United States v. International Business Machines Corporation*, 66 F.R.D. 223, 227 n.1 (S.D.N.Y.1975). While leave to supplement should be liberally granted where the full and speedy disposition of a cause of action will be promoted, *Friedman v. Typhoon Air Conditioning Co.*, 31 F.R.D. 287 (E.D.N.Y. 1962), that is not the case here. The allegations which plaintiff seeks to add to his complaint are factually unrelated to the conduct complained of in plaintiff's original complaint. Moreover, the defendants named in the original complaint are not alleged to have participated in or to have adopted, ratified or condoned the conduct complained of at Great Meadow. In view of these circumstances, and the fact that the new conduct complained of occurred in the Northern District of New York,[22] plaintiff's motion to supplement the complaint is denied without prejudice to plaintiff's right to institute an action in the Northern District of New York. *Singleton v. Hoester*, 505 F.Supp. 54 (E.D.Mo.1980); *see Howard v. Cronk*, 85 F.R.D. 737 (S.D.N.Y.1980).

### MOTION FOR A JURY TRIAL

With respect to plaintiff's motion for trial by jury, Rule 38(b) of the Fed.R.Civ.P. provides, in pertinent part:

Any party may demand a trial by jury of any issue triable of right by a jury by

---

**19.** See n.5, *supra*.

**20.** Defendants maintain that the superintendent's proceeding report submitted as an exhibit proves that plaintiff was transferred from Green Haven after and as a result of the hearing concerning plaintiff's protective admission to a special housing unit. The exhibit proferred by defendants is not dispositive. The report simply states, under the caption "Disposition Ordered," that involuntary protection status is to be continued until [plaintiff] is transferred to a disparate facility.

**21.** While counsel for defendants argues that defendant Smith is not liable because he lacked personal involvement in the matter, defendant Smith has failed to submit an affidavit to that effect. Attorney's affidavits made on information and belief do not satisfy the requirements

of Fed.R.Civ.P. 56(e). *United States v. Bosurgi*, 530 F.2d 1105 (2d Cir. 1976).

**22.** While defendants have not argued that venue would be improper, the Court notes that the applicable venue provision for a civil rights action brought pursuant to § 1983 is 28 U.S.C. § 1391 which provides that actions must be brought in the district where all defendants reside or in which the claim arose. *Jimenez v. Pierce*, 315 F.Supp. 365 (S.D.N.Y.1970). *See* 28 U.S.C. § 1392 (1976). Although it is not clear where the alleged new parties defendant reside, it seems probable that they do not reside in this district. It also seems clear that the cause of action arose in the Northern District of New York where the conduct alleged took place.

serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

Rule 38(d) provides that a party's failure to demand a jury trial in accordance with Rule 38 constitutes a waiver of the right to trial by jury. Since plaintiff's motion for trial by jury was made nearly two months after defendants' answer was served, plaintiff's motion is denied as untimely. *See McCray v. Burrell*, 516 F.2d 357, 371 (4th Cir. 1975), *cert. dismissed*, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976).

## MOTION FOR A PRELIMINARY INJUNCTION

Finally, plaintiff has moved for a preliminary injunction enjoining defendants and their agents from further harassing plaintiff in the manner described in the complaint. Since plaintiff's claim for injunctive relief is clearly related to the underlying claims, and is based upon the same facts as to which there are material disputed issues of fact, plaintiff's claim for a preliminary injunction should be consolidated with the trial on the merits of plaintiff's entire claim pursuant to Fed.R.Civ.P. 65(a)(2).