**In re TRANSPACIFIC CARRIERS CORPORATION, Hellenic Lines, Limited, Universal Cargo Carriers, Inc., Hellenic American Agencies, Inc., Debtors.**

**Bruce D. SCHERLING, Trustee of Hellenic Lines, Limited, Plaintiff,**

v.

**TEXACO INTERNATIONAL TRADE, INC., Defendant.**

**Bankruptcy No. 83 B 11775–78.
Adv. P. 84–6101A.**

United States Bankruptcy Court,
S.D. New York.

July 1, 1985.

Bruce D. Scherling, P.C., New York City, N.Y., for plaintiff; by Gustav P. Rech.

Peter A. Kast, White Plains, N.Y., for defendant.

### DECISION

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The trustee in bankruptcy initiated this adversary proceeding to recover, pursuant to 11 U.S.C. § 547 (1978), an allegedly preferential transfer made to Defendant, Texaco International Trade, Inc. ("Texaco") by Debtor Hellenic Lines Ltd. ("Hellenic") in payment for bunker fuel Texaco delivered to Hellenic. Texaco denies the avoidability of the transfer and has moved for summary judgment.

The undisputed facts are that at 9:40 p.m. on August 21, 1983, Texaco began loading bunker fuel into one of Hellenic's vessels, M/V Hellenic Sun. The loading continued uninterrupted until completion at 5:25 a.m. on August 22, 1983. With the loading of bunker fuel, Texaco acquired a maritime lien of debatable value. On October 5, 1983, forty-four days after August 22, Hellenic delivered a corporate check of $259,701.57 to Texaco in full payment for the bunker fuel; the check was honored on the following day. Hellenic filed a volun-

tary petition in bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, (the "Code"), on December 12, 1983. The trustee claims that the payment to Texaco is a voidable preferential transfer under 11 U.S.C. § 547(b). Texaco denies the allegation and asserts the payment falls within the § 547(c)(2) exception to avoidability.

A motion for summary judgment permits consideration of only whether "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) F.R.C.P. (1984). The moving party has the burden of demonstrating the absence of any genuine issues of material fact which precludes such relief. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980); *In re Euro-Swiss International Corp.*, 33 B.R. 872, 878 (Bankr.S.D.N.Y.1983). But where there is no genuine dispute as to a material fact, summary judgment has an appropriate and necessary role in efficient dispute resolution. The opposing party, therefore, cannot defeat such a demonstration through surmise, conjecture or allegation; it must come forward with facts asserted on the basis of knowledge rather than rest on an attorney's affidavit. *Quinn*, 613 F.2d at 445; *Applegate v. Top Associates*, 425 F.2d 92, 96 (2d Cir.1979); *Dressler v. MV Sandpiper*, 331 F.2d 130, 133–33 (2d Cir.1964).

A trustee may only avoid a transfer if it both meets the requirements of § 547(b) of the Code and does not fall within one of the exceptions provided by § 547(c). There is no dispute that Hellenic's payment to Texaco was "to or for the benefit of the creditor," § 547(b)(1), and that it was on the account of an antecedent debt incurred on the delivery of bunker fuel. *See* § 547(b)(2). Moreover, the honoring of Hellenic's check by the drawee bank on October 6 was within the 90-day period before the filing of the petition. *See* § 547(b)(4). Insolvency, the fourth element, is presumed. *See* § 547(f).

Section 547(b), however, is not satisfied unless the payment

that enables such creditor to receive more than such creditor would receive if

(A) the case were under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Here, Texaco acquired a maritime lien on the M/V Hellenic Sun on its physical delivery of necessaries (bunker fuel) to Hellenic's vessel. *Riffe Petroleum Co. v. Cibro Sales Corp.*, 601 F.2d 1385, 1389 (10th Cir. 1979); § 506(a); 46 U.S.C. § 971, *et seq.* It, therefore, contends that the payment discharged its maritime lien and, consequently, it did not receive more than it would in liquidation. For the same reason, it contends that the transaction falls within the exception codified in § 547(c)(1). That section provides that a transfer may not be avoided if such transfer was:

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

§ 547(c)(1).

Maritime liens, however, are accorded inverse priority; within ordered priorities, the last in time is first in right. Gilmore and Black, *The Law of Admiralty* at §§ 9–22, 9–23 (2d ed. 1975). The trustee's counsel, at the argument, claimed, apparently on the basis of having examined public court documents, that upon the libel of the vessel before the United States District Court for the District of Maryland, approximately $4,000,000 was realized and that some $30,000,000 in maritime liens have been asserted against it. These averments raise an issue of fact as to the value of Texaco's lien, thereby precluding summary judgment.

Because of that factual dispute, resolution of Texaco's summary judgment therefore turns on the exemption provided by § 547(c)(2) as it stood prior to amendment

in 1984. *See* P.L. 95–353, 11 U.S.C. § 547(c)(2)(B) (1984). As applicable here, that section provides:

The Trustee may not avoid a transfer

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

With respect to the ordinary course of business element, there is no dispute that Hellenic's payment was made in satisfaction of a debt incurred in the ordinary course of business. *See* § 547(c)(2)(A). Purchasing fuel is essential to the business of operating the cargo ships; the fuel purchase in question was one of 19 similar purchases during 1982 and 1983.

Rather, the trustee contends that the payment was not made in the ordinary course of business of Hellenic and Texaco and pursuant to ordinary business terms. He contends that Texaco materially changed its course of dealings with the debtor through restricting its 30-day credit terms to only one delivery at any one time when it had previously allowed Hellenic 30-day credit terms not so restricted. *See In Matter of Craig Oil Co.*, 31 B.R. 402, 406 (Bankr.M.D.Ga.1983) (debtor's payment by cashier's checks were not made in ordinary course of business or according to ordinary business terms when given to show good faith to the creditor, cashier's checks accounted only for 1% of total payments and payment regularly made to creditors by corporate check.) This assertion, however, is unsupported by any affidavit or deposition of one having personal knowledge as is required by F.R.C.P. Rule 56(e), but is contained only in the statement of counsel. Texaco asserts that terms constantly changed and that payment was not leveraged. It is settled that an affidavit does not raise an issue of fact. *American*

*Manufacturers Mutual Insurance Co. v. American Broadcasting Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir.1967). Unlike the dispute regarding the value of Texaco's maritime lien where an attorney's averment on the basis of public records is equivalent to personal knowledge, counsel bases his assertion of a change in credit terms on information said to be told to him by a former employee of the debtor. Yet no sworn statement by that employee has been submitted.

Nor does it appear to be any dispute of material fact regarding the 45-day period. In alleging that the payment fell within that period, the trustee contends that the payment was made not on October 5, 1983 when the check was delivered, but on October 6, 1983 when it was honored by the drawee bank, and that the obligation must be deemed to have arisen when delivery of bunker fuel commenced.

■ Neither prong of the argument is of merit. Under § 547(c) payment made pursuant to a subsequently honored check is deemed to be made when the check was delivered. *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 37 (1st Cir.1984); *In re Blanton Smith Corp. and Grubbs Farms, Inc.*, 37 B.R. 303, 309 (M.D.Tenn.1984); *In re Sider Ventures & Services Corp.*, 33 B.R. 708, 712 (Bankr.S.D.N.Y.1983), *aff'd* 47 B.R. 406 (Bankr.D.C.N.T.1985); 124 Cong.Rec. H 11097 (daily ed. Sept. 1978) and S 17414 (daily ed. Oct. 1978) cited in Appendix *3 Collier on Bankruptcy*. Given that authority, it is apparent that the payment was made within the 45-day period. The statutory language of § 547(c)(2)(B) plainly implies that the period commences on the day after the debt arose and does not include the 45th day.

Furthermore, the payment, which the Trustee seeks to avoid was made in ratification of an obligation that arose upon Texaco's completion of its contractual obligation to make complete delivery. Congress did not define when a debt is incurred except in the limited sense when a debt is a "tax". 11 U.S.C. § 547(A)(4). It left that issue to be determined pursuant to

652

state law precepts. "Debt" is merely defined as "liability on a claim." § 101(11), while a claim is defined as a right to payment whether or not such right is contingent, unmatured or disputed § 101(4). It is clear that the debt arises at the time of performance as opposed to later invoicing. *See* Levin, *An Introduction to the Trustee's Avoiding Powers*, 53 Am.Bankr.L.J. 173 (1979).

 The Trustee argues that Hellenic's obligation to pay arose on August 21, 1983 when Texaco commenced loading. Texaco then obtained a maritime lien. *Riffe Petroleum Co.*, 601 F.2d at 1389. There is no support, however, for equating the obligation to pay with the imposition of a lien. A debt arises when the debtor becomes "legally bound to pay." *Barash v. Public Finance Corp.*, 658 F.2d 504, 511 (7th Cir.1981). The attaching of the lien on the other hand permits the lienholder to seize and sell the property to satisfy the underlying obligation, but only after the obligation becomes binding. If the lienholder seizes wrongfully, it will be held liable for resulting damages. *Veverica v. Drill Barge Bucaneer No. 7*, 488 F.2d 880, 884 (5th Cir.1974). The narrow issue here is whether Hellenic's debt arose (1) incrementally during the loading process, or (2) upon completion of the loading process.

The incurring of a debt has often been determined on the nature of the goods delivered and the process of delivery. If the contracted for performance is an entire indivisible unit, courts have held that the payment obligation is deemed to arise upon completion of performance. *In re Gold Coast Seed Co.*, 751 F.2d 1118 (9th Cir. 1985) (in the absence of a contrary agreement a seller is entitled to payment upon shipment of goods); *In Matter of Emerald Oil Co.*, 695 F.2d 833 (5th Cir.1983) (debt arose when the contractual work was completed); *In the Matter of Georgia Steel, Inc.*, 38 B.R. 829 (Bankr.M.D.Ga.1984) (debt on gas arose upon reading of meters); *In re Morton Shoe Cos. Inc.*, 36 B.R. 14 (Bankr.D.Mass.1983) (obligation arose upon completion of the contractual redesigning and remodeling of the debtor's stores); *In re Saco Local Development Corp.*, 25 B.R. 876 (Bankr.D.Me.1982) (debt occurred upon completion of repair services to the debtor's trucks). Payment obligation at contract rate also arises upon the buyer's acceptance of the goods. *See* N.Y.U.C.C. § 2–607(1) and (McKinney's 1964) Official Comment 1.

If the contracted for performance is inherently divisible or of an on-going requirement nature, courts have held that the debt is incurred incrementally upon receipt of services. *In re Wathen's Elevators Inc.*, 37 B.R. 870 (Bankr.W.D.Ky.1984) (debt for grain delivered was incurred with each separate delivery of grain during one month delivery period); *In re Brown*, 20 B.R. 554 (Bankr.S.D.N.Y.1982) (in credit card transactions, payment obligation arises each time a charge card is used and a printed receipt issued to the debtor by a specific merchant); *In re Ray W. Dickey & Sons, Inc.*, 11 B.R. 146 (Bankr.N.D.Tex.1980) (obligation to pay for telephone service is deemed to arise when each telephone call is made). In cases where the buyer repudiates or refuses to accept the contract, the debt is to be measured by the reasonable value of the quantum of services conferred. N.Y.U.C.C. § 2–708.

From these cases, it appears that the courts, in line with business practices, look to see the nature of the contract and of the debt in determining when a debt arises. A contract is divisible if the "performance by each party is divided into two or more parts" and such performance is the "agreed upon exchange for a corresponding part of the other party." Restatement (Second) of Contracts § 265 Comments a, d (1979). If it is so divisible or if the debt arises in quantum meruit, a debtor is likely to be viewed as having made payment for each of the benefit conferred. But if the contracted for performance is an indivisible unit or if the debt lies in contract, then full payment of a debt is to be considered as a payment of the full contractual obligation rather than payment for a series of partial performances.

Here, it is undisputed that Texaco's loading of fuel was uninterrupted; thus the process itself is not divisible into discrete performances. Because Hellenic contracted for bulk delivery, the fuel delivered at any point in time during the loading process only constitutes a partial performance. The debt to Texaco cannot be deemed to arise until loading of the contracted amount has been completed. Moreover, Hellenic has not repudiated the contract; it has accepted the bunker fuel delivered on August 22, 1983 and has paid in full for the fuel delivered by tendering the check to Texaco on October 5, 1983. Once Texaco had performed its part under the contract, the duty to pay is to be determined on contract terms. *See* N.Y.U.C.C. § 2–607(1). To divide the contract into fuel delivered before and fuel delivered after 12:01 a.m. on August 1 would be highly artificial.

For the foregoing reasons, the motion for summary judgment is granted.

SETTLE JUDGMENT.