In re **TRANSPACIFIC CARRIERS CORPORATION, Hellenic Lines, Limited, Universal Cargo Carriers, Inc., Hellenic American Agencies, Inc., Debtors.**

Bruce D. **SCHERLING, Trustee of Hellenic Lines, Limited, Plaintiff–Appellant,**

v.

**TEXACO INTERNATIONAL TRADER INC., Defendant–Respondent.**

No. **85 Civ. 6242 (JFK).**

United States District Court, S.D. New York.

Feb. 1, 1990.

Bruce D. Scherling, P.C., New York City (Gustav P. Rech, of counsel), for plaintiff-appellant.

Peter A. Kast, Texaco Inc., White Plains, N.Y., for defendant-respondent.

## ORDER

KEENAN, District Judge:

This is an appeal from the decision of the United States Bankruptcy Court for the Southern District of New York, granting summary judgment for the defendant-respondent Texaco International Trader, Inc. (hereinafter "Texaco") and against the plaintiff-appellant Bruce D. Scherling, as

1. Defendant-respondent originally moved to dismiss the Trustee's appeal on the ground that it is premature since no judgment had not yet been entered in the Bankruptcy Court. Defendant-respondent subsequently withdrew its motion to dismiss through a stipulation after entry of the Judgment. Plaintiff-appellant then filed a second notice of Appeal.

2. Section 547(c)(2) of the Bankruptcy Code provides:

Trustee of Hellenic Lines Limited (hereinafter the "Trustee").[1] 50 B.R. 649. The appeal is brought pursuant to Bankruptcy Rule of Procedure 8001(a).

## Facts

On August 21–August 22, 1983, Texaco, acting on instructions from the vessel M/V HELLENIC SUN, one of the vessels of Hellenic Lines, Limited, loaded 9,627 barrels of bunker fuel aboard the HELLENIC SUN in the port of New Orleans. The August 21–22 delivery was one of nineteen deliveries made by Texaco to Hellenic vessels in the years 1982 and 1983. The total charge for the delivery and sale of the bunker fuel totalled $259,701.57. On October 5, 1983, Hellenic paid its debt by delivering check No. 2423 to Texaco in the amount of $259,701.57. Texaco deposited the check into its account, and payment was made on the check on October 6, 1983. Hellenic filed its voluntary petition for Bankruptcy under Chapter 11 of the Bankruptcy Code on December 12, 1983 and was converted to a Chapter 7 liquidation proceeding on or about March 16, 1984. The M/V HELLENIC SUN was sold on February 8, 1984 free and clear of debt.

This is an adversary proceeding commenced by the Trustee seeking the avoidance and recovery of the funds transferred by the Debtor to Texaco pursuant to 11 U.S.C. § 547. Texaco answered and subsequently filed a motion for summary judgment on the ground that there had been no transfer within ninety days of the filing of the Debtor's petition and that the transfer was made in the ordinary course of business between Texaco and the Hellenic, making the transfer not avoidable pursuant to 11 U.S.C. § 547(c)(2).[2] The Bankruptcy

The Trustee may not avoid a transfer

\* \* \* \* \* \*

(2) to the extent that such a transfer was—
 (a) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
 (b) made not later than 45 days after such debt was incurred;
 (c) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

court granted Texaco's motion for summary judgment on the ground that the transfer fell within 11 U.S.C. § 547(c)(2) and was therefore exempt from avoidance by the Trustee.

The Trustee appeals on the ground that the factual record did not warrant the Bankruptcy court's finding that there was no dispute that the Texaco/Hellenic transfer was in the parties' ordinary course of business. The Trustee also argues that the Bankruptcy court should have granted a continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

### Discussion

 The Trustee first argues that the court erred in granting the motion for summary judgment because Texaco failed to clearly establish the absence of a triable issue of fact. The Trustee submits that the court erred in finding that the transfer was made in the ordinary course of business and according to ordinary business terms and that the only evidence submitted in support of this finding was the affidavit of J.J. Bartell, a vice president of Texaco.

In considering a motion for summary judgment, the court's responsibility is "to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). In order to defeat a motion for summary judgment, the opponent must set forth the specific facts that place material issues in dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The Trustee takes issue with the Bankruptcy court's reliance on the affidavit submitted by Texaco which, the Trustee argues, "raises more issues of fact than it resolves and fails to clearly establish that the defendant-respondent is entitled to a judgment as a matter of law." Mem. at 7. The affidavit of J.J. Bartell, to which the Trustee refers, states that he has "personal knowledge of the matters stated herein."

(d) made according to ordinary business

Bartell Aff. ¶ 1. The paragraphs of which plaintiff complains state as follows:

6. Texaco is in the business of supplying bunker fuel to vessels such as the M/V HELLENIC SUN and has been for many years.

7. Hellenic was a regular customer of Texaco's in the years 1982 and 1983; its ships took delivery of bunker fuel from Texaco on nineteen separate occasions during that period.

8. The terms of the transaction now in dispute were similar to those of other transactions between Texaco and Hellenic, and were consistent with the course of dealing routine to Hellenic and Texaco in the years 1982 and 1983.

Plaintiff argues that affidavits by their nature have been held to be the least trustworthy basis for granting summary judgment as the affiant is not subject to cross-examination. *See Long v. Bureau of Economic Analysis*, 646 F.2d 1310 (9th Cir.), *vacated on other grounds*, 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981).

The Court finds, however, that the affidavit was made upon personal knowledge by an officer of Texaco, who was in the ideal position to know what the ordinary course of business was as well as the ordinary business terms between the parties. In response to the Bartell affidavit, the Trustee submitted only the affidavit of its attorney Gustav P. Rech. The court found that "[i]t is settled that an affidavit does not raise an issue of fact. *American Manufacturers Mutual Insurance Co. v. American Broadcasting Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir.1967)." The court discredited the affidavit in that "counsel bases his assertion of a change in credit terms on information said to be told to him by a former employee of the debtor. Yet no sworn statement by that employee has been submitted." 50 B.R. at 651. The court thus found the attorney's affidavit to be insufficient to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Courts in this district have consistently found that attor-

terms; . . . .

ney affidavits made on information and belief do not satisfy the requirements of Rule 56(e). *See, e.g., Hilliard v. Scully,* 537 F.Supp. 1084, 1090 n. 21 (S.D.N.Y. 1982); *Commercial Union Ins. Co. v. Albert Pipe & Supply Co.,* 484 F.Supp. 1153, 1157 (S.D.N.Y.1980); *Establissement Tomis v. Shearson Hayden Stone, Inc.,* 459 F.Supp. 1355, 1365 (S.D.N.Y.1978).

The Trustee argues that Mr. Rech had had conversations with the Hellenic's former Bunker Manager who "revealed that credit terms between the Debtor and the defendant-respondent were changed shortly prior to the preference period so as to compel the Debtor to make payment for a delivery of fuel oil prior to delivery to another vessel." Mem. at 8. The Trustee submits that a "more liberal standard should have been utilized by the Bankruptcy court in viewing the contents of the aforesaid affidavit in its review of the record." Mem. at 8. The Trustee attempts to analogize this case to one for fraud brought by a Trustee in Bankruptcy, in which standards of proof are more relaxed since a Trustee must often rely on second-hand information. Mem. at 9.

Texaco argues that the Trustee had the opportunity to take discovery and to move under Rule 56(f) for a continuance if it needed more time. Texaco argues, "that plaintiff-appellant chose for reasons sufficient to itself not to take discovery in the four months prior to oral argument is hardly grounds for abandoning the Rule 56 standard in this case." Opp. Mem. at 9. The Court agrees and finds the Trustee's argument to be meritless. The Bankruptcy court used the proper standards in assessing the proof before it.

Equally unsubstantiated is the Trustee's argument that, "although plaintiff-appellant did not submit an affidavit pursuant to Rule 56(f), the case law has held that a court may order such a continuance, despite the lack of an affidavit, in light of all relevant circumstances." Mem. at 10. The Court is unwilling to fault the Bankruptcy court with its failure to read the mind of the Trustee. The Trustee was fully aware that Texaco had moved for summary judg-

ment and that unless the court was presented with a triable issue of fact, based upon the standards relevant to a Rule 56 motion, summary judgment could be found for Texaco. The Court finds that the Trustee failed to present the Bankruptcy court with sufficient proof and failed to raise its alleged need for a continuance.

### Conclusion

Based on the foregoing discussion, the decision of the Bankruptcy court granting summary judgment for Texaco is affirmed. This action is to be removed from the active docket of this Court.

SO ORDERED.