**Mark DuPREE, Plaintiff,**

v.

**Wilson WALTERS, et al., Defendants.**

**No. 83 Civ. 0569 (RWS).**

United States District Court,
S.D. New York.

April 28, 1987.

---

Shea & Gould, New York City, for plaintiff; Clifford James, Douglas Burns, of counsel.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants; Tarquin Jay Bromley, Maryellen Chomsky, Asst. Attys. Gen., of counsel.

## OPINION

SWEET, District Judge.

In this action brought under 42 U.S.C. Sections 1981, 1983 and 1985(3) against defendant state corrections officers, plaintiff Mark DuPree ("DuPree") has moved for an order pursuant to Fed.R.Civ.P. 15 granting leave to file an amended complaint substituting Abdul-Karim Salaam (born Victor Lino) ("Salaam") for defendant K. Lido. Defendants oppose the motion, and seek Rule 11 sanctions. For the reasons discussed below, the motion to amend is granted, and the request for Rule 11 sanctions is denied.

### Prior Proceedings

The following facts are not in dispute.

DuPree, who is presently incarcerated at the Attica Correctional Facility of the New York State Department of Correctional Services ("DOCS"), commenced this action by complaint dated December 14, 1982 and filed January 19, 1983, alleging that he was taken from his cell and assaulted by eight corrections officers in violation of his constitutional rights. The incident allegedly took place at Sing Sing (then Ossining) Correctional Facility (hereinafter "Sing Sing") on November 19, 1982. The complaint further alleges that earlier that same day, DuPree and "Lido" had a verbal altercation in the mess hall.

The defendants in this action were served by certified mail, return receipt requested. For defendant "Lido," a return receipt signed by Correction Officer Hievat was filed with the court. On August 15, 1983, the defendants filed an answer to the complaint, which admits in its first paragraph that "defendants are employed by the New York State Department of Correctional Services."

On February 10, 1984, this court granted plaintiff's application for appointment of

counsel. On July 25, 1984, the law firm of Shea & Gould entered its appearance for plaintiff. On August 1, 1984, the court ordered that all discovery be completed by October 3, 1984. Subsequently, the court granted, with defendants' consent, numerous requests by DuPree's counsel to extend discovery. On June 23, 1986, DuPree's counsel issued its first discovery requests, noticing the deposition of two defendants. At the deposition of Correction Officer Thelma Cutts on July 22, 1986, defendants' counsel produced a July 17, 1986 memorandum on DOCS stationery reflecting that a search of DOCS' records revealed that no one named "Lido" had ever been employed by DOCS at any facility.

On September 12, 1986 (three days before the scheduled trial date), while preparing for trial at Sing Sing, defendants' counsel learned that a correction officer named Abdul Karim Salaam, whose name appeared as such on the B–Block duty roster for November 19, 1982, the date of the alleged assault, had previously been known as Victor Lino. Sing Sing's records showed that Lino had applied by petition dated October 12, 1982 to have his name changed, and that his petition was granted by Order of the Supreme Court of the State of New York dated October 15, 1982, to become legally effective November 26, 1982. Defendants' counsel then notified DuPree's counsel of these facts.

The trial scheduled for September 15, 1986 was adjourned for reasons unrelated to this motion.[1] Thereafter, DuPree's counsel took the deposition of Salaam on October 17, 1986, during which Salaam described a verbal interchange with DuPree in the Sing Sing mess hall, which he placed in time prior to December 19, 1982. He also testified that this was the only conversation he ever had with DuPree. According to Salaam, DuPree rose from his seat and asked him if he could return to the steam table to get something he had forgotten, Salaam refused the request, and DuPree was "discontented" and "bitter." Salaam was asked no questions about the assault that allegedly took place that day. Salaam also testified that he neither saw the complaint nor knew of an action against DOCS officers until defendants' counsel contacted him in September, 1986.

By papers dated December 22, 1986, DuPree brought the present motion to substitute Salaam for the defendant "K. Lido" named in the complaint.

*Relation Back*

The alleged assault in this case occurred in November, 1982, more than four years before DuPree brought the present motion to amend his complaint. Unless this amendment relates back to the original complaint, the three-year statute of limitations for Section 1983 actions, *see Okure v. Owens*, 816 F.2d 45 (2d Cir.1987), will have expired and the amendment will be time-barred.

Fed.R.Civ.P. 15(c), which governs the relation back of amended pleadings, provides in pertinent part:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the prop-

---

**1.** The trial did not take place because the United States Marshal's Service did not comply with the court's order to take custody of DuPree during the trial and house him in the Metropolitan Correctional Center overnight during the trial. The United States Marshal's Service appealed that order to the Second Circuit, which affirmed the order by opinion dated March 23, 1987. *See Rivera v. Santirocco*, 814 F.2d 859 (2d Cir.1987) (consolidated appeal).

er party, the action would have been brought against him.

There is no dispute that the claim against Salaam rose out of the incident set forth in the original complaint. The issue, then, is whether Salaam has received such notice of the action that he will not be prejudiced in his defense, *see, e.g., Wood v. Worachek,* 618 F.2d 1225 (7th Cir.1980), and knew or should have known that, but for a mistake of identity, the action would have been brought against him, *see e.g., Hernandez Jiminez v. Calero Toledo,* 604 F.2d 99 (1st Cir.1979).

DuPree apparently does not dispute Salaam's statement that Salaam had no notice of this lawsuit before the statute of limitations expired. DuPree also does not question the statement of defendants' counsel that he did not know of the identity of "K. Lido" prior to September 12, 1986.

■ Even assuming that Salaam did not have actual notice of this lawsuit, it is reasonable to charge him with constructive notice of the lawsuit against "K. Lido" through the knowledge of the defendants' attorney. Courts have uniformly held that knowledge of a lawsuit can be imputed to a new defendant state official through his attorney, when the attorney also represented the officials originally sued. *See e.g. Morrison v. LeFevre,* 592 F.Supp. 1052, 1057–58 (S.D.N.Y.1984); *Davis v. Krauss,* 93 F.R.D. 580 (E.D.N.Y.1982).

In *Morrison v. LeFevre,* 592 F.Supp. 1052 (S.D.N.Y.1984), this court found that a proposed amendment adding fourteen new defendants, employees of DOCS at the time of the alleged incident, related back to the original complaint. Although the court noted that the failure to name the proper defendants was caused by the defendants' attempts from the outset to suppress the true facts about what occurred, the court did not conclude that the new defendants

had actual notice of the action. In *Davis v. Krauss,* 93 F.R.D. 580 (E.D.N.Y.1982), an amendment substituting "Josef G. Boutin" for "Joseph Souton" and "Dennis Sheeran" and "Karl Mogenis" for "Dennis Sheeran McGuinness" as names of defendant police officers was held to relate back to the original complaint. Although the plaintiff did not have counsel and the counsel for the defendants knew of the identity of the police officers involved in the incident, which is not the case here, the plaintiff and the court were notified of the inability to serve the improperly identified defendants before the statute of limitations expired. In the present case, neither DuPree nor the court received notice that "K. Lido" was improperly named before the statute's expiration. *See also Wiliams v. Ward,* 553 F.Supp. 1024, 1026 (W.D.N.Y.1983) (Attorney General's knowledge of lawsuit imputed to Commissioner of the Department of Corrections); *Kirk v. Cronvich,* 629 F.2d 404 (5th Cir.1980) (knowledge of attorney and deputy sheriff imputed to sheriff); *Florence v. Krasucki,* 533 F.Supp. 1047 (W.D.N.Y.1982) (defendants listed in the original complaint as "Five Troopers who participated in the acts which are the subject of this action but whose names are unknown" held to have received constructive notice through the Attorney General, the same attorney representing the named defendant police officer).

■ Defendants have not convincingly distinguished these cases. As long as defendants' counsel knew through the complaint that Dupree also intended to sue "K. Lido," he was on notice to prepare a defense for that defendant as well.[2] Thus, the substituted defendant has not been prejudiced in his defense. *See Ames v. Vavreck,* 356 F.Supp. 931, 942 (D.Minn. 1973). Similarly, had Salaam been advised of the complaint by his attorney, he would have known that he was the "Lido" with

---

**2.** Under Public Officers Law § 17 (McKinney Supp.1987), the Attorney General is required to defend any state employee in a civil action arising out of an act alleged to have occurred while the employee was acting within the scope of his employment. *See* § 17(2)(a) & (b). In addi-

tion, the state is required to indemnify its employees for any damages resulting from acts within the scope of the employees' duties, not including intentional wrongdoing. *See* § 17(3)(a).

whom Dupree had a verbal altercation and that "but for a mistake ... the action would have been brought against him." Fed.R.Civ.P. 15(c)(2).

 This result imposes a duty on the Attorney General to investigate the identities of each of the named parties and inform the plaintiff and the intended defendant of any finding of mistaken identity. Nevertheless, the imposition of such a duty on the Attorney General's office is fully consistent with the aim of the civil rights statutes to redress violations of plaintiffs' constitutional rights. A prisoner, without the resources to investigate the identity of his alleged attackers, cannot be expected to perform the investigation expected of plaintiffs in other situations. Although Dupree was granted counsel one-and-a-half years after his case was filed, and his counsel should have sought discovery before three years was out, this court does not see fit to punish Dupree for the failings of his pro bono counsel. Even though DuPree's counsel was unconscionably dilatory, defendants' counsel should not be able to take advantage of that delay and wait, with the proper information readily available, for unknowing plaintiffs to make sure that the names of the defendants are correctly spelled.

In this case, the Assistant Attorney General had only to run each name through the DOCS computer, as was eventually done on July 17, 1986, to verify that each defendant was an employee of DOCS. In its investigation to answer the complaint, the Attorney General's office could easily have asked the properly named defendants about the identity and role of "K. Lido," and informed the plaintiff of the result. DuPree then could have amended his complaint before the statute of limitations expired.

Furthermore, the actions of defendants' counsel and the Bureau of Prisons lulled DuPree into believing that the defendant "K. Lido" was properly identified and properly served. From the response he got to the service of the complaint, DuPree had no reason to suspect that he had not properly identified this defendant. A prison official signed for the complaint addressed to "K. Lido," and neither DuPree nor the court was notified before 1986 that such a person was not employed by DOCS. Similarly, the Attorney General in its answer to the complaint affirmatively acknowledged that "defendants are employed by the New York State Department of Correctional Services."

The Attorney General's reliance on the Supreme Court's decision in *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), as authority to the contrary is misplaced. In that case, the Supreme Court refused to allow the plaintiff, after the limitations period had run, to amend its complaint to add Time, Incorporated ("Time") as a defendant rather than "Fortune" Magazine, a division of Time. The basis for that holding, however, was that Time could not have had even constructive notice through its affiliate Fortune, since neither Fortune nor Time, the only defendants, received notice of the filing of the suit until after the limitations period had run. The Court in fact distinguished cases in which some but not all of the defendant government officers were served within the statutory period, stating that "[i]n each of the cases ..., the Government within the period of limitations was on notice of the claim." *Id.* at 2386 n. 8.

Because Salaam had constructive notice through his attorneys of the institution of this lawsuit against "K. Lido" and would have known, with actual notice, that the suit intended to name him as a defendant, the proposed amendment relates back to the original complaint and the motion to amend the complaint is granted. Because of the abundance of case law supporting this result, it is difficult to see how the defendants' counsel in good faith can request Rule 11 sanctions. At any rate, that request is denied.

This case will go forward to trial on June 1, 1987, or as soon thereafter as the court's schedule permits.

IT IS SO ORDERED.