**Roderick POMPEY, Plaintiff,**

v.

**James LUMPKIN, Defendant.**

**Civil Action No. 2:01cv315–T.**

United States District Court,
M.D. Alabama,
Northern Division.

June 18, 2004.

Beverly Joan Rickels, Birmingham, AL, David A. Gespass, Gespass & Johnson, Birmingham, AL, Elizabeth A. Roland, Helena, AL, for Plaintiff.

Charles Winston Sheehan, Jr., Ball, Ball, Matthews & Novak PA, Montgomery, AL, George W. Royer, Jr., Lanier, Ford, Shaver & Payne PC, Huntsville, AL, for Defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, plaintiff Roderick Pompey, a former county-jail inmate, asserts one claim: that defendant James Lumpkin, a former county-jail warden, was deliberately indifferent to Pompey's medical needs, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C.A. § 1983. Jurisdiction is proper under 28 U.S.C.A. § 1331 (federal question) and § 1343 (civil rights).

The issue before the court, as presented in a motion for summary judgment filed by Lumpkin, is whether an amended complaint filed by Pompey adding Lumpkin as a defendant relates back to the date that Pompey initially filed his lawsuit. If the amendment relates back, then Pompey's § 1983 deliberate-indifference claim against Lumpkin is not time-barred and Lumpkin's summary-judgment motion should be denied; if it does not relate back, the claim is time-barred and Lumpkin's summary-judgment motion should be granted. United States Magistrate Judge

Vanzetta Penn McPherson has entered a recommendation that the amendment should relate back and thus that Lumpkin's summary-judgment motion should be denied. After an independent and de novo review of the record, including Lumpkin's objections to the magistrate judge's recommendation, the court respectfully disagrees with the magistrate judge and concludes that the amendment does not relate back. Lumpkin's motion for summary judgment will therefore be granted.

### I. Standard of Review

The court makes a "de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made." Fed. R.Civ.P. 72(b); 28 U.S.C.A. § 636(b)(1). The court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.; see also United States v. Raddatz*, 447 U.S. 667, 673–84, 100 S.Ct. 2406, 2411–16, 65 L.Ed.2d 424 (1980).

### II. Background

Because the particular dates on which events occurred are very important in this case, the court will set forth the relevant background information in a timeline format.

- July 6–21, 1999: Pompey was incarcerated in the Chilton County, Alabama Jail. He alleges that he was denied medical care for his diabetes and for the complications stemming from a recent surgery; he further alleges that, as a result of this denial, he suffered two diabetic comas and an infection while he was incarcerated.
- March 19, 2001: Pompey filed this lawsuit. He named as defendants then-Chilton County Jail Warden Kevin Driver and Chilton County Sheriff Billy Fulmer. By consent of the parties, this case was assigned to Magistrate Judge McPherson pursuant to 28 U.S.C.A. § 636(c).
- July 2001: The two-year statute of limitations on Pompey's § 1983 claim expired. In *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985), the Supreme Court held that, in § 1983 actions, the relevant statute of limitations is the applicable state personal injury statute. The Alabama statute of limitations for personal injury actions is two years. 1975 Ala.Code § 6–2–38(*l*); *Lufkin v. McCallum*, 956 F.2d 1104, 1106 n. 2 (11th Cir.1992).
- October 3, 2001: When he took depositions, Pompey discovered that Driver was not, in fact, the warden of the jail when he was incarcerated; Lumpkin was. Lumpkin had resigned in February 2000, and Driver succeeded him as the warden. Lumpkin has not worked for Chilton County since February 2000. Before the October 2001 depositions, the defense attorneys did not inform Pompey or the court that Driver was not the warden at the relevant time, either in their filings or informally.
- October 9, 2001: Pompey filed a motion to dismiss Driver from this suit.
- October 12, 2001: The magistrate judge granted the motion to dismiss Driver with prejudice.
- November 1, 2001: Pompey filed a motion for leave to amend his complaint to add Lumpkin as a defendant.
- August 5, 2002: The magistrate judge denied the motion to add Lumpkin, and also granted summary judgment in favor of Sheriff Fulmer.
- August 19, 2002: Pompey appealed the magistrate judge's August 5 decision.
- May 20, 2003: The Eleventh Circuit Court of Appeals issued the mandate

on its unpublished per curiam opinion affirming summary judgment in favor of Sheriff Fulmer but reversing the magistrate judge's decision to deny Pompey's motion for leave to amend his complaint. The appellate court said that leave to amend should have been granted because the time past the court-ordered deadline for amendments (six weeks) was relatively brief and there was no prejudice to the original defendants, Driver and Fulmer. The court also noted that the entire problem "could have been avoided had defendants complied with the Federal Rules of Civil Procedure." Opinion of the Eleventh Circuit, dated April 21, 2003, at 6 n. 3. In particular, according to the appellate court, the defendants' answer failed to state the defense that Driver was not the warden at the relevant time. However, the court left open the issue of whether Pompey's amended complaint should relate back to his original complaint, stating that this "should be determined after discovery with the opportunity for plaintiff and the added defendant to be heard." *Id.* at 8.

- May 28, 2003: Pursuant to the Eleventh Circuit's decision, the magistrate judge granted Pompey's previously filed motion for leave to amend his complaint.
- July 2003: Lumpkin was first made aware of the existence of this lawsuit when a copy of an order was mailed to his home.[1]
- August 25, 2003: Pompey's amended complaint, naming Lumpkin as the sole defendant, was docketed.
- August 25, 2003: Lumpkin moved for summary judgment on the ground that, because Pompey's amended complaint did not relate back to the filing of the original complaint, it is barred by the two-years statute of limitations for § 1983 claims.
- December 29, 2003: The magistrate judge denied Lumkin's motion for summary judgment.
- January 9, 2004: Lumpkin filed a motion to vacate and reconsider the December 29 order, arguing again in favor of summary judgment on the merits and also arguing that he had not consented to have his case heard by a magistrate judge.
- January 26, 2004: The magistrate judge agreed that, although the original parties to this case consented to her jurisdiction, Lumpkin had not done so. Thus, she vacated her De-

---

1. Lumpkin filed an affidavit in which he states: "The first knowledge of any kind that I had regarding this lawsuit was in July of 2003 when I received by mail at my home a copy of the order of July 18, 2003 of dismissal of the plaintiff's claims against me." Lumpkin affidavit, attached to Lumpkin's motion to modify and for summary judgment, filed Aug. 25, 2003 (Doc. no. 49). On July 18, 2003, the magistrate judge entered an opinion (Doc. no. 42) and judgment (Doc. no. 43) dismissing Pompey's claims due to his failure to comply with the court's orders, specifically for his failure to provide Lumpkin's correct address to the court.

After this, Pompey moved for relief from the judgment saying that he did provide an address for Lumpkin to the court, that he did not know of any problems with service until he found out about the dismissal of the case, that he was willing to effect service on Lumpkin via a process server, and that it was improper for the court to dismiss the case based on the United States Marshal's failure to achieve service of process. The magistrate judge granted his motion and reinstated the case.

Whether a copy of an opinion and judgment *dismissing* the case was sufficient to give Lumpkin notice of the *institution* of the case is an issue the court need not address, because, for purposes of this litigation, the court will assume that it was sufficient.

cember 29 order and re-entered it as a recommendation.

- January 28, 2004: This case was randomly re-assigned to the undersigned, United States District Judge Myron H. Thompson.
- February 4, 2004: Lumpkin filed objections to the magistrate judge's recommendation. The parties have also filed additional briefs in support of their positions.

### III. Discussion

■■■ As the magistrate judge's recommendation notes, the gateway issue in this case is whether Pompey's amended complaint relates back to the date of the filing of his original complaint. If not, because the two-year statute of limitations for Pompey's § 1983 claim expired in July 2001 and Pompey did not file his motion to add Lumpkin until November 2001,[2] Pompey's claim against Lumpkin is time—barred—unless, of course, the limitations period is tolled.

In her recommendation, the magistrate judge evaluated the relation-back issue under both subsections (c)(2) and (c)(3) of Fed.R.Civ.P. 15. Fed.R.Civ.P. 15(c) states as follows:

"(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statutes of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

Lumpkin argues that only subsection (c)(3) is applicable when an amendment changes a party or the naming of a party.

■■■ The caselaw reveals that subsection (c)(3), not subsection (c)(2), is applicable when the amendment changes or adds a defendant. *Powers v. Graff,* 148 F.3d 1223, 1225 (11th Cir.1998) ("When a plaintiff amends a complaint to add a defendant, but the plaintiff does so after the running of the relevant statute of limitations, then Rule 15(c)(3) controls whether the amended complaint may 'relate back' to the filing of the original complaint . . .").

Subsection (c)(1) of Rule 15 might also apply to this case. That subsection, which was added to Rule 15 in 1991, provides that an amendment relates back when "[r]elation back is permitted by the law that provides the statute of limitations applicable to the action." In *Saxon v. ACF Indus., Inc.,* 254 F.3d 959, 963 (11th Cir. 2001), the Eleventh Circuit held that subsection (c)(1) allows federal courts to apply state relation-back law "in a diversity case where state law provides the applicable

---

**2.** For statute of limitations purposes, an amended complaint is deemed filed on the date that the party files a motion for leave to file the amended complaint, rather than on the date that the motion for leave to amend is granted, or the date that the amended complaint is docketed as a separate document. *Wallace v. Sherwim Williams Co., Inc.,* 720 F.Supp. 158, 159 (D.Kan.1988).

statute of limitations." The appellate court has not addressed whether subsection (c)(1) would apply in a federal-question case in which the statute of limitations is supplied by state law, as is the case in § 1983 actions like this one. However, other circuits have held that subsection (c)(1) does apply in · such cases. *Henderson v. Bolanda,* 253 F.3d 928, 932 (7th Cir.2001); *Lovelace v. O'Hara,* 985 F.2d 847, 851–52 (6th Cir.1993). Because, as explained below, the result would be the same even if subsection (c)(1) applies, this court need not address whether subsection (c)(1) applies here.

Thus, this court will analyze whether Pompey's amended complaint relates back under both subsections (c)(3) and (c)(1) of Rule 15.

### A.  Rule 15(c)(3)

The magistrate judge found that Pompey's amended complaint could relate back under Fed.R.Civ.P. 15(c)(3). Lumpkin objects.

As stated, subsection (c)(3) provides that an amendment of a pleading that "changes the party or the naming of the party against whom a claim is asserted" relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" and, "within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

Rule 4(m), to which Rule 15(c)(3) refers, provides a period of 120 days for service of process, but if service is not accomplished within 120 days, the court may "direct that service be effected within a specified time." Further, according to Rule 4(m), if the plaintiff "shows good cause for the failure [to serve process], the court shall extend the time for service for an appropriate period."

It is undisputed that Lumpkin did not receive actual notice of this suit within 120 days of its being filed. Indeed, he did not receive actual notice until July 2003, more than two years after the suit was filed.

### 1.  Good cause

■ In her recommendation, the magistrate judge found that Pompey had shown "good cause" for an extension of the 120–day period in which Lumpkin must have received notice, and recommended granting such an extension for the period between Pompey's appeal and the Eleventh Circuit's order. Specifically, she stated, "Pompey has demonstrated good cause for his failure [to serve the amended complaint on Lumpkin within 120 days after he filed his complaint], and the Court of Appeals made that finding by issuing its order as a mandate on 21 May 2003." Magistrate judge's recommendation, filed Jan. 26, 2004 (Doc. no. 59), at 9. The magistrate judge further held that Lumpkin had received notice of the action within the Rule 4(m) period because "Pompey's amendment was filed 'within the period provided by Rule 4(m) for service of the summons and complaint.' " *Id.* at 8. The recommendation also relied on the findings that "Lumpkin was aware of all the appellate proceedings," and that Lumpkin's "awareness of, and active participation in the proceedings nullifies any claim of prejudice." *Id.* at 9.

Lumpkin objects to the legal conclusion that Rule 4(m)'s "good cause" exception can apply to Rule 15(c)(3), arguing that "the requirement that a defendant be timely served under Rule 4(m) . . . is whol-

ly separate and independent from the [Rule 15(c)(3)] requirement that a newly-added defendant receive notice of the original action within the 120 day time period provided by Rule 4(m)." Objections to recommendation, filed Feb. 4, 2004 (Doc. no. 62), at 7. Lumpkin also argues that the Eleventh Circuit did not find "good cause." *Id.* at 9. As a factual matter, Lumpkin disputes the recommendation's finding that Pompey moved to amend his complaint within the 120–day period. *Id.* Finally, Lumpkin argues that he was not aware of the appellate proceedings and did not participate in them. *Id.*

The Eleventh Circuit has not ruled on whether the "good cause" provision of Rule 4(m) applies to the period within which a new defendant must receive notice under Rule 15(c)(3). However, other authority suggests that it does. The advisory committee's notes on the 1991 amendments to Rule 15(c)(3) state that, "[i]n allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule." Other courts have applied the "good cause" exception to the question of whether an amendment relates back under Rule 15(c)(3), or have observed that it could apply. *Skoczylas v. Fed. Bureau of Prisons,* 961 F.2d 543 (5th Cir.1992) ("relation back is allowed as long as the added party had notice within 120 days following the filing of the complaint, or longer if good cause is shown"); *Whitehead v. Malone,* 2002 WL 849583 (N.D.Ill.2002) (finding good cause to extend the 120 day period for notice and allowing complaint to relate back even though new defendant had not received notice within 120 days).

However, assuming that the "good cause" exception in Rule 4(m) does apply to relation-back analysis under Rule 15(c)(3), Lumpkin is correct that Pompey has not shown good cause for an extension. The magistrate judge's recommendation relied on the finding that Pompey filed his amended complaint within 120 days after the filing of his original complaint. However, Pompey did not file the amended complaint within 120 days after the filing of his original complaint. Because the original complaint was filed on March 19, 2001, the 120–day period expired on July 17, 2001; Pompey filed his motion to amend on November 1, 2001, which is 227 days after the original complaint was filed.

Pompey has not demonstrated good cause for his failure to give Lumpkin notice within 120 days after he filed his complaint. The original defendants' failure to inform Pompey that he had named the wrong defendant does not constitute good cause. The name of the warden at the time Pompey was incarcerated was not information available only to the defendants. Rather, it was public information; Pompey or his attorney could have discovered it without assistance from the original defendants. *See Bagwell v. City of Atlanta,* 109 F.R.D. 290, 292 (N.D.Ga.1985) ("The identify of the Commissioner of Public Safety is a matter of public record and plaintiff's counsel must be held to a minimum level of competence in determining the proper parties"); *cf. Whitehead v. Malone,* 2002 WL 849583, *2–3 (N.D.Ill. 2002) (extending the Rule 4(m) period when plaintiff reasonably relied on an inaccurate Incident Report prepared by a sheriff's deputy in order to determine the identity of the sheriff's deputy who had been involved in an altercation with the plaintiff). Neither is Pompey entitled to the extra leniency due to an incarcerated or pro se plaintiff; Pompey did not suffer from such disadvantages or disabilities. He was not incarcerated and was represented by counsel by the time he filed his complaint. *Cf. Baltrunas v. Sheahan,* 161

F.R.D. 56 (N.D.Ill.1995) (extending Rule 4(m) period where incarcerated, pro se plaintiff spelled defendant officers' names incorrectly, personnel at officers' workplace resisted service of process, and another defendant who shared counsel with officers resisted discovery in order to avoid revealing the officers' names).

Neither has Pompey shown good cause for his failure to promptly correct his error once he found out that he had named the wrong defendant. Pompey found out that he had named the wrong defendant on October 3, 2001, but he did not file for leave to amend his complaint until November 1, 2001. *See Thompson v. Larkins,* 46 F.3d 1134, 1995 WL 42368, *3 (7th Cir. 1995) (unpublished opinion) (plaintiff's unexplained failure to file and serve amended complaint for three weeks after discovering proper defendant's identity constituted neglect); *cf. Whitehead v. Malone,* 2002 WL 849583, *3 (N.D.Ill.2002) (extending the Rule 4(m) period when plaintiff's attorney took "immediate steps" to resolve the problem when he discovered the wrong defendant had been named).

Finally, and most crucially, Pompey has not shown good cause for his failure to give Lumpkin notice for a year and a half after he discovered that Lumpkin was the correct defendant. The magistrate judge, in holding that the notice period should be extended to cover the time when Pompey was appealing her denial of his motion for leave to amend his complaint, stated that the Eleventh Circuit had found good cause when it issued its mandate ordering that Pompey's amended complaint be allowed. However, the Eleventh Circuit explicitly did not reach the question of whether the amended complaint related back, saying, "Assuming defendant Fulmer has standing to assert Lumpkin's affirmative defense [of the statute of limitations], it could be waived or subject to tolling. Whether the amended complaint will relate back to the original filing date under Federal Rule of Civil Procedure 15(c) should be determined after discovery with the opportunity for plaintiff and the added defendant to be heard." Opinion of the Eleventh Circuit, dated April 21, 2003, at 8.

The Eleventh Circuit's conclusion that the amendment should have been allowed does not implicitly mean that the amendment must relate back. Rule 15(a) states that leave to amend should be "freely given when justice so requires"; this is a more lenient standard than the standard for relation back under Rule 15(c)(3). Further, in determining whether the amendment should be allowed, the Eleventh Circuit necessarily examined only whether the original defendants would be prejudiced by an amendment; it did not examine whether Lumpkin would be prejudiced if the amended complaint were to relate back.

While the magistrate judge's recommendation states that Lumpkin was aware of and actively participated in the appellate proceedings in this case, the evidence shows that Lumpkin did not know of the existence of this case until after the appellate proceedings had concluded, that is, in July 2003. Even though the magistrate judge denied Pompey's motion for leave to amend his complaint, Pompey could still have served Lumpkin with a copy of his proposed amended complaint as early as October 2001. If Pompey had done this when he first learned that Lumpkin was the correct defendant, Lumpkin would have had notice of this suit in October 2001. The result of Pompey's failure to do this was that, without excuse, Lumpkin did not know of the existence of this suit for more than one and one-half years, from October 2001 until July 2003. In other words, Pompey has not given any explanation, much less shown good cause, for his failure to give Lumpkin notice that he was

the correct defendant in this suit as soon as Pompey was aware of that fact in October 2001.

### 2. Extension when good cause not shown

Although the Eleventh Circuit has not done so, several other courts have found that the amended Rule 4(m), in addition to requiring courts to extend the 120–day period for service of process for good cause, allows courts the discretion to extend that deadline even when no good cause is shown.[3] *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir.1996); *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir.1996); *Adams v. Allied-Signal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir.1996); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir.1995); *Espinoza v. United States*, 52 F.3d 838, 840–41 (10th Cir.1995); *Madison v. BP Oil Co.*, 928 F.Supp. 1132, 1136 (S.D.Ala.1996); *contra Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir.1995); *Zachery v. Thigpen*, 895 F.Supp. 1472, 1474 (M.D.Ala.1995).

■ However, assuming that the court has discretion to extend the Rule 4(m) period absent a showing of good cause, the court declines to do so in this case. Rule 15(c)(3) requires that a new defendant receive notice so that the party "will not be prejudiced in maintaining a defense on the merits." In this case, an extension of two years would be required, since the 120–day period expired in July 2001 and Lumpkin did not receive notice until July 2003. Lumpkin states that he would be prejudiced because of the amount of time that has passed since the relevant events occurred.

As noted above, Pompey could have shortened the two-year period for which he seeks an extension had he given Lumpkin notice of the existence of this suit in October 2001, when Pompey first learned that Lumpkin was the correct defendant. However, he did not do so, and, as a result, Lumpkin did not learn of the existence of this suit for one and one-half years, until July 2003. At that point, four years had passed since the relevant events had occurred (July 1999 to July 2003), and the statute of limitations had been expired for two years (July 2001 to July 2003). The passage of so much time amounts to prejudice to Lumpkin, because his and others' recollections of the events have doubtless faded. *See Bagwell v. City of Atlanta*, 109 F.R.D. 290, 292 (N.D.Ga.1985) (finding a defendant would be prejudiced by being added as a defendant four years after the underlying events occurred). Indeed, there is a point at which the delay is so long that prejudice can be reasonably presumed absent evidence to the contrary,

---

**3.** The Eleventh Circuit held prior to the 1993 amendments to Rule 4 that courts did not have the discretion to extend the 120–day period if good cause was not shown. *Brown v. Nichols*, 8 F.3d 770, 775 (11th Cir.1993) (analyzing former Rule 4(j)); *In re Cooper*, 971 F.2d 640, 641 (11th Cir.1992); *Schnabel v. Wells*, 922 F.2d 726, 728 (11th Cir.1991).

This holding was consistent with the text of Rule 4(m)'s predecessor, Rule 4(j), which stated that if service was not made within 120 days and the party on whose behalf service was requested could not show good cause, the court "shall" dismiss the action. 1 James Wm. Moore et al., *Moore's Federal Practice* ¶ 4App.09[1] (3d ed.2003). However, effective December 1, 1993, Rule 4(j) was amended to become current Rule 4(m), which states that a court "shall" extend the 120–day period if good cause is shown, but also states that the court "shall dismiss the action ... or direct that service be effected within a specified time." The advisory committee's notes to the 1993 amendments to Rule 4(m) specifically state that a court may "relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." Thus, it appears that the Eleventh Circuit cases holding that an extension could not be granted in the absence of good cause have been abrogated by the amendment to the rule.

and a four-year delay, in the face of a two-year statute of limitations, certainly supports such a presumption. Thus, a discretionary extension is not appropriate.

### 3. Constructive notice

■ Pompey argues that Lumpkin received constructive notice of the existence of this lawsuit through the insurance carrier for the county. Courts impute notice of the existence of a lawsuit when there is sufficient "identity of interests" between the original and new parties. *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir.1998). Identity of interests "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* Constructive or imputed notice can exist, for instance, when the original and added parties are a parent corporation and its wholly owned subsidiary or are co-executors of an estate. *Rogatz v. Hosp. Gen. San Carlos, Inc.*, 89 F.R.D. 298 (D.Puerto Rico 1980). Often "notice may be imputed to the new party through shared counsel." *Jacobsen*, 133 F.3d at 320.

■ In this case, the original and substituted defendants do not share counsel. Pompey argues, though, that they do share an insurer, namely Chilton County's insurance carrier, and that the insurer chose to have them represented by different counsel purposefully in order to avoid the "constructive notice through shared counsel" rule. While there is no direct evidence of this, Pompey plausibly argues that, if there had been no connection at all between the original defendants and Lumpkin, the original defendants would have promptly informed Pompey that Driver was not the correct defendant. That they did not do so is at least circumstantial evidence that, perhaps at the behest of the county or its insurance carrier, the original defendants, or their attorneys, were acting with an eye

towards protecting Lumpkin from suit by allowing the statute of limitations to expire.

In at least one case, notice was imputed through an insurer, where the insurer itself was the original defendant. *Angel v. Ray*, 285 F.Supp. 64 (E.D.Wis.1968) (imputing notice to driver of car where his insurer was the original defendant, based on the "identity of interests" between the insurer and the insured); *but see Rogatz v. Hosp. Gen. San Carlos*, 89 F.R.D. 298 (D.Puerto Rico 1980) ("The interests between insured and insurer, far from being identical, are sometimes antagonistic"). However, here the insurance company was never a party to this lawsuit. Although Chilton County's insurance carrier might arguably have an identity of interests with both the original defendants and Lumpkin, the original and substituted defendants do not necessarily share an "identity of interests" between each other.

In another case in which a court found notice through a common insurance company, *Swartzwelder v. Hamilton*, 56 F.R.D. 606, 609 (M.D.Pa.1972), the court noted that the new defendants had notice of the suit both because they shared counsel with the original defendants and because their common insurance company had interviewed them about the case. In the instant case, by contrast, there is no evidence that the insurance company ever did any investigation on its own, or that it interviewed Lumpkin about the case. Pompey does not dispute that Lumpkin did not actually know anything about the existence of the suit until two years after it was initiated.

In cases involving government officials as defendants, courts often find constructive notice exists when the original and added defendants are both employed by the same government entity and have the same lawyers. *Jacobsen v. Osborne*, 133

F.3d 315 (5th Cir.1998); *Richmond v. McElyea,* 130 F.R.D. 377 (E.D.Tenn.1990); *Morrison v. Lefevre,* 592 F.Supp. 1052, 1057–58 (S.D.N.Y.1984); *Mitchell v. Hendricks,* 68 F.R.D. 564 (E.D.Pa.1975).[4] However, in all of these cases, the original and new defendants were both represented by the same attorney. In this case, they are not. On June 24, 2003, in response to a court order, the attorney for the original defendants, C. Winston Sheehan, Jr., filed a response stating that he did not represent Lumpkin, had never spoken to him, and did not know if he was still living.

Also unlike the instant case, in the above cases the original and substituted defendants were all still employed by the same government or government agency (or the original defendant was the government agency itself).

Here, because Lumpkin is no longer an employee of Chilton County, there can be no argument that he should have been aware of the institution of the suit through his employment.

In a case quite similar to this one, a plaintiff bringing a wrongful death claim on behalf of a deceased inmate incorrectly named the then-current Public Safety Commissioner instead of the person who had been the commissioner at the relevant time. As in this case, the former official had retired a year before the suit was brought and did not have actual notice of the existence of the suit. Even though the original and new defendants would be represented by the same counsel, the court concluded that "the theory of constructive notice would be stretched beyond its logical limits if applied in the instant case." *Bagwell v. City of Atlanta,* 109 F.R.D. 290, 292 (N.D.Ga.1985). The court also noted that there was no evidence that the defendants misled or confused the plaintiff. The identity of the Commissioner of Public Safety was a matter of public record; the plaintiff was not pro se; and plaintiff's counsel could have discovered the identity of the defendant. The court also found that the new defendant would be prejudiced by being added as a defendant in his individual capacity "at this late juncture," four years after the events occurred. *Id.* The reasoning of *Bagwell* applies here. Even if Driver and Lumpkin had the same counsel, which they do not, or even if notice could be imputed through an insurance carrier just as through counsel, the fact that Lumpkin resigned from the county a year before the suit was initiated, and was apparently never questioned in regard to the events at issue, means that notice should not be imputed to him.

Pompey counters, essentially, that it is unfair for the county's insurance carrier to avoid paying a judgment by instructing the original defense counsel not to tell Pompey that Driver was not the correct warden and by hiring different counsel for Driver and Lumpkin. The court does not condone the original counsel's alleged failure to tell Pompey that Lumpkin was the warden at the relevant time. Nor does the holding in this case rule out the possibility that notice could be imputed in a case in which there was more evidence that the insurance carrier purposefully chose to employ different counsel in order to pre-

---

4. In a series of New York cases in which the original and substituted defendants were all state police officers or prison guards whom the state was statutorily required to indemnify, courts allowed constructive notice to be imputed through the State. However, all of these cases rely on New York state law, which specifically states that a public body is the "real party in interest" in determining the requirements of notice and the statute of limitations. *Bond v. Nolan,* 1994 WL 132139 (S.D.N.Y.1994); *Dell'Orfano v. Scully,* 692 F.Supp. 226 (S.D.N.Y.1988); *Davis v. Krauss,* 93 F.R.D. 580 (E.D.N.Y.1982). Thus, these cases are inapplicable here.

vent constructive notice from being imputed to the new defendant; however, here that evidence is lacking.[5]

Because Pompey cannot show that Lumpkin had actual or constructive notice of the suit within the period of time provided by Rule 4(m), it is not necessary to reach the issue of whether his naming the wrong defendant was due to "mistake." The amended complaint does not relate back under Fed.R.Civ.P. 15(c)(3).

## B. Rule 15(c)(1)

■ Even assuming that Fed.R.Civ.P. 15(c)(1) applies to federal-question cases in which state law provides the statute of limitations, the rule does not help Pompey. As explained above, under this rule an amendment will relate back if it would do so under Alabama's rules on relation back. Under Alabama law, relation back is governed by Ala. R. Civ. P. 15(c). Alabama Rule 15(c) was amended in 1992 so that it became almost the same as Fed.R.Civ.P. 15(c). The Alabama rule "acknowledges the availability of relation back under circumstances where a federal cause of action would be saved by federal principles of relation back." Ala. R. Civ. P. committee comments.

The Alabama rule does differ from the federal rule in a few ways. Most notably, it allows relation back under "fictitious party practice" rules. However, Pompey did not name any fictitious parties in his complaint, and none of the other differences between the federal rule and the Alabama rule is applicable here.[6] Thus, Pompey's proposed amended complaint cannot relate back under Fed.R.Civ.P. 15(c)(1).

## C. Equitable Tolling

■ Pompey argues that, even if his amended complaint does not relate back, his claim should be allowed to proceed based on the doctrine of equitable tolling. However, equitable tolling is not appropriate when the plaintiff could have, through due diligence, discovered the correct defendant's name within the limitations period. *Pearson v. Brooks,* —— So.2d ——, 2003 WL 22872176, *6 (Ala.2003); *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 561 (7th Cir.1996) ("The doctrine of equitable tolling permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before"). As discussed above, Pompey could have discovered that Lumpkin was the warden at the relevant time through the exercise of due diligence. Further, it would be inappropriate to toll the limitations period during the period from October 2001 until July 2003, when Pompey did know Lumpkin's identity and nonetheless failed to give him notice of this suit.

## IV. Conclusion

This case serves as a cautionary tale to plaintiffs who learn that they have named

---

5. Moreover, because constructive notice is an equitable principle, in the sense that it is court-created rather than statute-based, it is arguable whether it should lie in instances such as here, where, after learning that he had the wrong defendant, the plaintiff, without justification, waited more than one and one-half years before giving actual notice of the lawsuit to the right defendant.

6. Ala. R. Civ. P. 15(c) is the same as Fed. R.Civ.P. 15(c) with these exceptions: (1) Ala. R. Civ. P. 15(c)(2) makes an exception for "counterclaims maturing or acquired after pleading" that would be allowed under Ala. R. Civ. P. 13(c); (2) Ala. R. Civ. P. 15(c)(3) provides that the period for service of process on a newly-named defendant is "within the applicable period of limitations or one hundred twenty (120) days of the commencement of the action, whichever comes later"; and (3) Ala. R. Civ. P. 15(c)(4), which has no federal counterpart, provides that relation back is allowed when it is "permitted by principles applicable to fictitious party practice pursuant to [Alabama] Rule 9(h)."

the wrong defendant when the statute of limitations on their claims has run. In general, a plaintiff initiates an action by filing a complaint with the court, Fed. R.Civ.P. 3, and then serving the summons and complaint upon the defendant within 120 days, Fed.R.Civ.P. 4(m). However, Rule 15(c)'s rules on relation back place great importance on the date on which the new defendant receives "notice of the institution of the action." This "notice" need not be formal service of process; it can be informal. Thus, when a plaintiff seeks to change or add a defendant, he must not only file an amended complaint with the court and seek to have the new defendant served as soon as possible, but he must also give the new defendant informal notice of the existence of the action as soon as possible. In this case, it was Pompey's failure to give this informal notice for a period of a year and a half that did the most to doom his case.

For the above reasons, Lumpkin's objections are sustained, the magistrate judge's recommendation is rejected, and Pompey's motion for summary judgment is granted.

### JUDGMENT

In accordance with the memorandum opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of this court as follows:

(1) The objections filed by defendant James Lumpkin on February 4, 2004 (Doc no. 62), are sustained.

(2) The recommendation of the magistrate judge, entered January 26, 2004 (Doc. no. 59), is rejected.

(3) The motion for summary judgment, filed by defendant James Lumpkin on August 25, 2003 (Doc. no. 49), is granted.

(4) Judgment is entered in favor of defendant Lumpkin and against plaintiff Roderick Pompey, with plaintiff Pompey taking nothing by his complaint.

It is further ORDERED that costs are taxed against plaintiff Pompey, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.